# Plaintiff's Amended Complaint Exhibit 1

Will Morrison (07587)
MORRISON LAW OFFICE, INC.
5957 S. Redwood Road, Suite 101
Salt Lake City, Utah 84123
Telephone: 801-519-9772

Michael A. Worel (12741)
Ricky Shelton (14784)
DEWSNUP KING OLSEN WOREL HAVAS MORTENSEN
36 South State Street, Suite 2400
Salt Lake City, Utah 84111
Telephone: 801- 533-0400
mworel@dkolaw.com
rshelton@dkolaw.com

*Attorneys for Plaintiffs*

---

EIGHTH JUDICIAL DISTRICT

UINTAH COUNTY, VERNAL, UTAH

---

| | |
|---|---|
| NOLEEN PAUGH and DONALD PAUGH, as the heirs of Coby Lee Paugh; and ROBERT HARLOW, as personal representative of the estate of Coby Lee Paugh<br><br>        Plaintiffs,<br><br>    vs.<br><br>ASHLEY VALLEY MEDICAL CENTER, LLC dba ASHLEY REGIONAL MEDICAL CENTER; JOSEPH AARON BRADBURY, D.O.; LOGAN SCOTT CLARK, P.A.; UINTAH COUNTY; KORI ANDERSON; DAN BUNNELL; KYLE FULLER; TYLER CONLEY; RICHARD GOWEN; JUSTIN RIDDLE; and DOES 1-10;<br><br>        Defendants. | **AMENDED COMPLAINT**<br><br>Tier 3<br><br><br>Case No. 170800084<br><br>Judge Edwin T. Peterson |

COMES NOW BEFORE THE COURT Plaintiffs Noleen Paugh, Donald Paugh and Robert Harlow, bringing this Complaint against Defendants and praying for relief.

### Parties, Jurisdiction, Venue, and Tier

1.    Coby Lee Paugh is a deceased person.  He died on July 25, 2015, at the age of 27 in the Uintah County Jail.  Coby was not married and did not have any children.

2.    Noleen Paugh and Donald Paugh are the natural parents of Coby.  They resided in Uintah County, Utah, at the time of Coby's death, but now they reside in California.

3.    Robert Harlow is the brother of Coby and personal representative of Coby's estate.  He resides in Salt Lake County, Utah.

4.    Noleen Paugh, Donald Paugh, and Robert Harlow are collectively referred to herein as "Plaintiffs".  They assert these claims pursuant to Utah Code Ann. § 78B-3-106 and § 78B-3-107.

5.    Ashley Valley Medical Center, LLC dba Ashley Regional Medical Center ("Ashley Medical Center") is located in Vernal, Utah.  Ashley Medical Center is registered as a limited liability company in Delaware and, upon information and belief, at least one of its members is a citizen of Utah.

6.    Joseph Aaron Bradbury, D.O. ("Dr. Bradbury) is an emergency-medicine physician who treats patients at Ashley Medical Center.  Upon information and belief, Dr. Bradbury is domiciled in Uintah County, Utah.

7.    Logan Scott Clark, P.A. ("PA Clark") is a physician's assistant who treats patients at Uintah County Jail.  Upon information and belief, P.A. Clark is domiciled in Utah County, Utah.

8.    Uintah County (which includes its departments of Uintah County Jail and Uintah County Sheriff's Office) is a county of Utah subject to suit under Utah Code Ann. § 17-50-302.

9.    Kori Anderson ("Anderson"), Dan Bunnell ("Bunnell"), Kyle Fuller ("Fuller"), Tyler Conley ("Conley"), Richard Gowen ("Gowen"), and Justin Riddle ("Riddle") are employees of Uintah County and are collectively referred to herein as "Uintah Employees". They are being sued in their official and personal capacities.  Upon information and belief, they are all domiciled in Uintah County, Utah.

10.    Does 1–10 are individuals or entities whose true names are not known at this time.

11.    Ashley Medical Center, Dr. Bradbury, Uintah County, PA Clark, and Uintah Employees are collectively referred to herein as "Defendants".

12.    The Court has subject-matter jurisdiction pursuant to Utah Code Ann. § 78A-5-102 and § 63G-7-501.

13.    This Court has personal jurisdiction over Defendants.  Defendants are citizens of Utah, domiciled in Utah, or persons/entities who have submitted to personal jurisdiction under Utah Code Ann. § 78B-3-205.

14.    Venue is proper in this Court under Utah Code Ann. § 78B-3-307 and §63G-7-502 because the cause of action arose in Uintah County, Utah, and also because at least one of the Defendants resides there.

15.    This is a tier 3 case under Utah Rule of Civil Procedure 26(c)(3) because Plaintiffs claim more than $300,000 in damages.

16.    Plaintiffs have completed the pre-litigation requirements of the Utah Health Care Malpractice Act, Utah Code Ann. § 78B-3-401 et seq., and the Division of Occupational and Professional Licensing has issued a Certificate of Compliance against Ashley Medical Center, Dr. Bradbury, PA Clark, and Uintah County.

17.    Plaintiffs have completed the notice-of-claim and undertaking requirements of the Utah Governmental Immunity Act, Utah Code Ann. § 63G-7-101 et seq.

**Background**

18.    Prior to his death, Coby resided with his parents in Vernal, Utah.

19.    Coby suffered from chronic alcoholism, and was addicted to alcohol.

20.    As a result of his ongoing battle with chronic alcoholism, Coby was well known to law enforcement and to Ashley Regional Medical Center.

21.    On March 10, 2015, Coby pleaded guilty to an alcohol-related offense, and was ordered to be on supervised probation and not consume alcohol for a period of six months.

22.    After a two-day drinking binge in July of 2015, Coby recognized that he needed help for his condition and called law enforcement on himself, reporting that he had violated his probation by consuming alcohol.

23.    Coby anticipated that by turning himself in, he would end up in jail and have an opportunity to receive the help he needed for his current intoxication and long-term alcoholism.

24.    Coby turned himself into the custody of Uintah County Sheriff's Office during the early morning hours of July 24, 2015.

25.    Over several years, Coby struggled with alcohol addiction.  Uintah County Sheriff's Office and Ashley Medical Center has many interactions with Coby over the years and were well aware of his problems with alcoholism.

26.    In the early morning hours of July 24, 2015, Coby turns himself into the custody of Uintah County Sheriff's Office for being intoxicated in violation of the court order.

27.    Coby voluntarily took a breathalyzer, which showed his blood-alcohol level to be .324, well over the legal limit.

28.    After being taken into custody, Coby was transported by law enforcement to the emergency room at Ashley Medical Center around 1:30 a.m. on July 24, 2015.

29.    During his stay in the ER, Coby came under the care of Dr. Bradbury.

30.    Despite having such a significant blood alcohol level, Coby remained in the ER for less than an hour, and was discharged at approximately 2:19 a.m.

31.    Dr. Bradbury conducted an exam for Coby and arrived at the following assessment: "Alcohol Abuse-Continuous, Alcohol (ETOH) Overdose."

32.    Dr. Bradbury ordered a prescription for Chlordiazepoxide (Librium), to be given in 25 mg oral capsules x 2 capsules as needed up to 300 mg/day.

33.    On information and belief, no medications were administered to Coby while he was in the ER.

34.    Dr. Bradbury made the decision to discharge Coby back to police custody, recording in the chart: "[Coby] is currently stable and safe for incarceration, if he develops withdrawal symptoms he will have to be returned to the hospital."

35.    Coby subsequently developed withdrawal symptoms while at the Uintah County Jail, but he was never returned to the hospital.

36.    Instead, he died while in the custody, care, and control of the Uintah County Jail.

37.    Coby was found deceased at the jail at 6:10 AM on July 25, 2015.

38.    No one was with Coby at the time of his death, and no one at the jail discovered Coby's death until well after Coby had passed away.

**First Cause of Action**
**42 U.S.C. § 1983 against Uintah Employees**

39.    Plaintiffs reincorporate all the preceding allegations.

40.    Under federal law, made applicable to state and local governments and to those officers and officials acting under color of law and authority, Coby had the constitutional right to be free from the wanton and unnecessary infliction of cruel and unusual punishment.

41.    Coby's right to be free from the wanton and unnecessary infliction of cruel and unusual punishment is a fundamental right protected by the Eighth and Fourteenth Amendments

to the United States Constitution, as well as by Section 1983 of the Civil Rights Act, Title 42 of the United States Code.

42. Additionally, such right is guaranteed by Article I, Section 9 of the Utah Constitution.

43. Coby's right to be free from the unnecessary and wanton infliction of cruel and unusual punishment was violated by Uintah Employees.

44. During the material events in this case, Coby was under the dominion, custody, and control of Uintah Employees who, acting under color of law, were deliberately indifferent to Coby's serious medical needs.

45. Uintah Employees exhibited deliberate indifference to Coby's serious medical needs by willfully and wantonly failing to give him the medication that he had been ordered to receive, which he needed to receive in a timely manner in order to help him with a serious, life-threatening medical condition.

46. Uintah Employees also exhibited deliberate indifference to Coby's serious medical needs by isolating him in a separate cell not appropriate for detoxing inmates and not monitoring his serious, life-threatening medical condition.

47. Uintah Employees also exhibited deliberate indifference to Coby's serious medical needs by ignoring medical orders provided by Dr. Bradbury and other medical providers.

48. Uintah Employees also exhibited deliberate indifferent to Coby by ignoring the severe and obvious deterioration of his health while in the jail.

49. Uintah Employees violated Coby's constitutional rights by willful misconduct.

50. Uintah Employees knew or should have known that Coby was suffering from a sufficiently serious medical conditional (severe alcohol withdrawal), and that he needed to be

returned to the hospital for appropriate management, but not one of the defendants ever took any affirmative steps to return Coby to the hospital.

51.     Uintah Employees knew of the excessive risk this medical condition posed to Coby's health and safety, yet they disregarded this risk.

52.     Uintah Employees were all working at the jail during Coby's time there, and they had multiple opportunities to observe Coby's deteriorating condition, yet they ignore it.

53.     At all times material herein, Coby was suffering from the influence of severe alcohol consumption, as well as from withdrawal symptoms, and he was incapable of medically managing his condition.

54.     At all times material herein, Coby was entirely dependent upon his jailers to manage his condition.

55.     Uintah Employees took upon themselves the responsibility to make life or death medical decisions for Coby, willfully disregarding the explicit orders from the ER to return Coby to the hospital for management of his serious medical condition.

56.     Despite having access to medical providers better qualified to make appropriate medical decisions to manage Coby's condition, Uintah Employees exercised a willful and deliberate indifference to Coby's serious medical needs by failing to contact such providers at a time when Coby was gravely ill.

57.     In addition to the wrongful conduct noted above, Uintah Employees failed to adhere to established jail policies and procedures by failing to perform timely living area checks by making timely rounds and physically inspecting Coby's person.

58.     Uintah Employees exhibited deliberate indifference to Coby's serious medical needs by knowingly disregarding an excessive risk to Coby's health and safety by moving him to a cell all by himself while he was gravely ill, and by proceeding to ignore and neglect him thereafter, all to his great detriment and harm.

59.     Coby was discovered dead in his cell, more than several hours after he had passed away, which once again evidences a deliberate indifference by Uintah Employees to Coby's serious medical needs.

60.     In doing the acts alleged in this Complaint, Uintah Employees were acting under the color of law and under the authority of their respective offices as deputy sheriffs and other officers of the Uintah County Sheriff's Office and/or the Uintah County Jail.

61.     The conduct of Uintah Employees as alleged herein was flagrant, wrongful and illegal, and was committed in willful violation of Coby's constitutional civil rights.

62.     The conduct of Uintah Employees as alleged herein cannot be immunized under state law because the conduct violated a clearly established right of which a reasonable person would have known.

63.     As a result of having his civil rights violated, Coby was made to suffer cruel and unusual punishment at the hand of the named defendants, ultimately resulting in the loss of his life, all to his great detriment and harm, and to the great detriment and harm of his parents and family.

64.     As a direct and proximate result of the unlawful and wrongful conduct of Uintah Employees, Coby suffered and died, and Plaintiffs have incurred considerable general and special damages (i.e., non-economic and economic damages), all to their great detriment and harm.

65.     Uintah Employees were personally and directly involved in violating Coby's rights.

### Second Cause of Action
**42 U.S.C. § 1983 (*Monell*—policy and custom) against Uintah County**

66.     Plaintiffs incorporate all the preceding allegations.

67.     Uintah County (specifically, Uintah County Jail and Uintah County Sheriff's Office) had an official policy and an informal custom amounting to a widespread practice that

had a direct causal link to Coby's death and that was enacted and maintained with deliberate indifference to an almost inevitable violation of the Eighth and Fourteenth Amendments.

68. Specifically, these policies and customs involved failure to dispense medication to inmates, failure to care for and monitor inmates who have a serious medical need, improperly booking inmates who should receive medical care for a serious medical need, failure to properly care for inmates suffering alcohol withdrawal, and other things.

69. Policy-making officials of Uintah County knew of these policies and customs, but acted with deliberate indifference towards previous constitutional violations by consciously and deliberately choosing to disregard the risk of harm that these policies and customs created.

70. These policies and customs were the moving force behind the unconstitutional acts against Coby.

71. These polices and customs were continuing, widespread and systematic, and have been in effect since at least 2014.

72. Similarly situated inmates were mistreated the same way as Coby.

73. For example, Jeremy Hunter died at Uintah County Jail in 2014 because he was not given necessary medication for a serious medical condition.

74. Pursuant to these policies and customs, Coby was placed in isolation for an extended period of time and not monitored at all despite his serious medical condition.

75. Pursuant to these policies and customs, Coby was not provided the medication he needed for his serious medical condition.

76. Pursuant to these policies and customs, Coby was not taken to the hospital when his health seriously deteriorated.

77. Pursuant to these policies and customs, Coby's serious medical condition was ignored.

**Third Cause of Action**
**42 U.S.C. § 1983 (*Monell*—failure to train and supervise) against Uintah County**

78. Plaintiffs incorporate all the preceding allegations.

79. Policy-making officials of Uintah County were deliberately indifferent to the need to properly train and supervise employees at Uintah County Jail and Uintah County Sheriff's Office.

80. Uintah County had actual and constructive notice that its failure to properly train and supervise was substantially certain to result in a constitutional violation of prisoner's right to medical care.

81. Uintah County consciously and deliberately chose to disregard this risk of harm.

82. Past violations of this right constituted a pattern of tortious conduct that made another constitutional violation, like that against Coby, highly predictable and plainly obvious.

83. Uintah County failed to train and supervise its employees to handle reoccurring situations where an inmate, like Coby, had a serious medical need and needed to be administered the appropriate medication. This failure created an obvious potential for constitutional violations.

84. This failure to train and supervise was a deliberate and conscious choice by Uintah County.

85. This failure caused Coby's death.

86. This claim is supported by the facts the previous inmates at Uintah County Jail have died and suffered severe injuries from not receiving medication and other necessary medical treatment.

### Fourth Cause of Action
### Negligence against Dr. Bradbury and PA Clark

87. Plaintiffs incorporate all the preceding allegations.

88. As Coby's medical-care providers, Dr. Bradbury and PA Clark owed Coby a duty of care.

89. Dr. Bradbury and PA Clark breached this duty of care in the following ways:

a.  improperly discharging Coby from a medical facility to Uintah County Jail;

b.  failing to properly monitoring Coby;

c.  not properly assessing the life-threatening risks of Coby's alcohol withdrawal;

d.  not prescribing the appropriate medications and dosages to Coby; and

e.  other breaches that discovery may reveal.

90.    These breaches were the actual and proximate cause of Coby's death.

**Fourth Cause of Action**
**Vicarious Liability/Respondeat Superior against Ashley Medical Center**

91.    Plaintiffs incorporate all the preceding allegations.

92.    The negligent acts of the employees and agents of Ashley Medical Center (including Dr. Bradbury and others) caused Coby's death.

93.    These acts were the kind of act that Dr. Bradbury and other typically perform as employees and agents of Ashley Medical Center.

94.    These acts occurred within the ordinary hours and spatial boundaries of their employment and agency.

95.    These acts were motivated, at least in part, by the purposed of serving the interests of Ashley Medical Center.

96.    Ashley Medical Center is liable for these negligent acts.

**Fifth Cause of Action**
**42 U.S.C. § 1983 (government action by private actor) against PA Clark**

97.    Plaintiffs incorporate all the preceding allegations.

98.    Providing medical care to inmates in jail is a traditional and exclusive function of the government.

99.    By performing this function for Uintah County, PA Clark engaged in state action.

100.    In addition, Uintah County and PA Clark acted in concert in effecting the deprivation of Coby's constitutional rights.

101.    Uintah County assumed responsibility for PA Clark's treatment of inmates and imposed upon him rules of conduct to do so.

102.    In performing this joint action, PA Clark obtained significant aid from government officials.

103.    Consequently, it can be fairly said that PA Clark is a government actor.

104.    In addition, Uintah County has far insinuated itself into a position of interdependence with PA Clark that he must be recognized as a joint participant in the challenged activity.

105.    Uintah County has a contractual relationship with PA Clark for him to provide medical care and medication to inmates at the jail.

106.    This relationship has existed for many years, and has resulted in a commingling of responsibilities.

107.    This relationship involved a substantial degree of cooperation between Uintah County and PA Clark.

108.    PA Clark acted with deliberate indifference to Cody's serious medical condition by failing to prescribe and provide the proper medication and by failing to properly evaluate and monitor Coby.

109.    PA Clark knew Coby's condition presented an excessive risk to his health and safety, yet PA Clark disregarded this risk.

110.    For this claim, Plaintiffs sue PA Clark in his personal capacity.

### **Prayer for Relief**

Plaintiffs pray for judgment against Defendants as follows:

- For all damages that Plaintiffs are entitled to and that are reasonable in the circumstances;
- For economic damages in such amount as will be proven at trial;
- For non-economic damages in such amount as will be proven at trial;

- For non-economic damages specifically for the pain and suffering that Coby experienced from the time of Defendants' wrongdoing to the time of his death;

- For a reasonable attorneys' fees and experts' fees pursuant to 42 U.S.C. § 1988;

- For pre- and post-judgment interest;

- For punitive damages because Defendants' actions are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of others; and

- For court costs.

## **Jury Demand**

Pursuant to Utah Rule of Civil Procedure 38, Plaintiff demands a trial by jury for all issues so triable.

Dated this 30th day of October, 2017.


DEWSNUP KING OLSEN WOREL
HAVAS MORTENSEN


/s/ *Ricky Shelton*
Michael A. Worel
Ricky Shelton
*Attorneys for Plaintiffs*